## NEW AMSTERDAM CASUALTY COMPANY *et al.* v. McFARLEY.

No. 13514. NOVEMBER 15, 1940. REHEARING DENIED DECEMBER 5, 1940.

*Powell, Goldstein, Fraser & Murphy,* for plaintiffs in error.

*C. B. McCullar,* contra. *Howard Tiller & Howard* and *Frank H. Morrison 2d,* as amici curiæ.

DUCKWORTH, Justice. The record presents the specific question as to whether or not an award of the Industrial Board denying compensation on account of disability resulting from accidental injury arising out of and in the course of employment, but enduring for less than seven days, may be reviewed under the Code, § 114-709. The Court of Appeals held that the application of the employee for such a review should have been considered on its merits by the Industrial Board, and the petition for certiorari assigns error on this ruling. In *Davis* v. *Ætna Life Insurance Co.,* 41 *Ga. App.* 113 (151 S. E. 812), this question was dealt with, and the decision by the Court of Appeals, that the employee was entitled to a review, was reversed on certiorari. *Ætna Life Insurance Co.* v. *Davis,* 172 *Ga.* 258 (157 S. E. 449). This court pointed out that the Industrial Board was a mere creature of the statute, brought into being by the legislature as an administrative body. It therefore has no inherent powers, and consequently has no lawful right to

act except as directed by law. In ruling on the question now before us this court said: "The Industrial Commission has not the power and authority, under section 45 [Code, § 114-709] or other provisions of that act, after a full hearing and rendition of an award denying compensation, to which no appeal is entered, to entertain another application by the employee, filed after the time provided in the act for entering an appeal, for compensation for the same injury, based upon an alleged change in the condition of such employee." It appeared that the employee had been the victim of an accident arising out of and in the course of his employment, but the Industrial Board denied compensation, because it was found that the accident produced only superficial wounds and did not result in compensable disability. Thus it is undeniably apparent that the sole ground upon which the award denying compensation was based was "physical condition." Yet, without quibbling over that fact, this court ruled that the award denying compensation could not be reviewed under section 45 of the act. In the present case the award denying compensation was based upon "physical condition." The facts in the two cases are so similar that no reasonable distinction can be drawn. That decision is controlling authority here, and we should either overrule it or follow it; and being convinced of its soundness, we approve and follow it. The argument is advanced, because of the mere fact that in making preliminary rulings the Industrial Board found that disability resulting from the accidental injury existed for a period of time short of the minimum of seven days, which under the Code, § 114-401, is not compensable except for medical aid as provided in § 114-501, that this constituted an award in favor of the employee, notwithstanding the fact that the award in this case was one denying compensation. If this argument is meritorious, and if it is accepted, then it inevitably must follow that the employer had a legal right to appeal, although the award of the Industrial Board denying any compensation was in favor of the employer. Such an appeal would have been instantly dismissed by any court of law, on the ground that the appellant had suffered no injury. This clear fact can not be circumvented by the argument that the Industrial Board has the power to render an advisory opinion, or an opinion that in the first instance is one "favorable to the employee" and in the second is one of uncertainty, indefiniteness, the true meaning of which must await future examination and determination.

To make an award either allowing or disallowing compensation, aside from medical aid as provided in section 114-501, the Industrial Board must under the law determine the preliminary questions whether or not there was an accidental injury resulting in disability for more than seven days, and whether or not it arose out of and in the course of employment. If these preliminary questions are decided in the affirmative, then the employee is entitled to compensation in some amount. On the other hand, a negative decision on any one of these facts requires an award denying compensation. The only award that the Industrial Board has the power under the law to make is either to deny or to grant compensation. No authority is to be found anywhere for the board to make an award simply finding that disability does or does not exist. Any award that does not deal with the question of compensation is a legal nullity, and can not be styled either for or against any one. We have seen that the ruling of the board in the present case to the effect that disability did not exist for a period of time to be compensable could not have been appealed from by the employer; and certainly it can not be held that the employer would be bound by an adverse ruling, and at the same time be denied the right of appeal.

This question is of vital importance, and we believe an examination of the unambiguous statute will remove uncertainties and prevent future confusion. If the statute is clear and unambiguous, no court has a right to construe it to mean other than what it declares. *Neal* v. *Moultrie,* 12 *Ga.* 104, 110; *Standard Steel Works Co.* v. *Williams,* 155 *Ga.* 177 (2), 181 (116 S. E. 636); *State* v. *Camp,* 189 *Ga.* 209 (6 S. E. 2d, 299). If the statute is unambiguous, its wisdom is a matter exclusively reserved to the legislative branch of the government, and is no legitimate concern of the judiciary. The only authority which the Industrial Board possesses to make a review is found in the Code, § 114-709. Under this section, it may upon its own motion or upon the application of any party in interest, before judicial determination, review any award or settlement made between the parties and filed with the department, on the ground of a "change in condition." It should be observed that this portion of the statute clearly and unmistakably identifies the thing that can be reviewed, in these words: "any award or any settlement made between the parties and filed with

the department." We are not here concerned with "any settlement made between the parties," for the reason that no such settlement "has been filed with the department." Hence the question of compensation in the form of medical aid under section 114-501 is not involved. But if the statute stopped here, in view of the meaning of the word "award" as used in the statute, it would appear that the award denying compensation was subject to review on a change of condition. Thus far, apparently the purpose of the statute is to keep open the question of the extent of disability, in order that either party may later have that question re-examined for the protection of their respective rights. But the statute does not stop here; and under the well-recognized rule of construction applicable alike to statutes and contracts, they must be construed as a whole, and the law will not sanction a construction of an isolated portion apart from the whole. As an inseparable part of the same legislative intention and enactment the statute declares in simple and unambiguous language what the Industrial Board can lawfully do on such review, the exact language being as follows: "on such review, may make an award ending, diminishing or increasing the compensation previously awarded or agreed upon." To say that the first portion, providing for review, can not be nullified by the latter portion defining the full scope of what can be done on review, does not amount to a legal interpretation of the statute, but is simply arguing the legislative 'wisdom in thus limiting the review. The legislature had the legal right and power to deny any review whatever. Consequently it had the unchallengable right to limit and restrict that review to any issue which it chose.

An award denying compensation is an award granting to the employee precisely *nothing,* and despite any attempt to end, diminish, or increase it, it will remain the same *nothing.* To propose making a new award allowing compensation on review, by suggesting that something added to nothing would constitute "increasing," is to juggle with words and ignore the inescapable fact that nothing remains nothing always. The legislature having clearly stated what could be done on such review, and there being nothing that the board could lawfully do in the present case, a review would be meaningless. Since there was no "compensation previously awarded or agreed upon," manifestly the board could not have ended, decreased, or increased something that had never existed. An award

by the board denying compensation, after the expiration of the time in which same can be appealed from, stands as an absolute legal bar to any action either on motion of the board or on application of interested parties under the Code, § 114-709. In its opinion the Court of Appeals cited *Home Accident Insurance Co.* v. *Mc-Nair,* 173 *Ga.* 566 (161 S. E. 131), where approval was given to the following language in *South* v. *Indemnity Insurance Co.,* 39 *Ga. App.* 47 (3) (146 S. E. 45): "Upon an application for such review, the essentials leading up to the award are to be taken as res judicata, but the physical condition of the employee remains open to inquiry." This rule was properly applied in both of those cases, for the reason that in both an amount of compensation had been awarded to the employee. In all such cases there is "compensation previously awarded or agreed upon," which the Industrial Board on review because of a changed condition may "end, dimininish, or increase," as provided by the statute. But that part of the rule stating that "the physical condition of the employee remains open to inquiry" does not obtain in those cases where the award of the board denies any compensation. It would be useless to keep open and inquire into the physical condition of the employee, since there is no authority under the law for the board to do anything about it, regardless of what such inquiry might disclose. The board in the present case correctly held that it had no authority to consider the application for review on the ground of a change in condition. The ruling of the Court of Appeals that the board had such authority is erroneous.

*Judgment reversed. All the Justices concur, except Bell and Jenkins, JJ., who dissent.*

Jenkins, Justice, dissenting. The Code, § 114-709, as amended, provides as follows: "*Review of award or settlement on motion of board or because of change in condition; award.*—Upon their own motion before judicial determination or upon the application of any party in interest on the ground of a change in condition, the Industrial Board may, within two years from the date that the board is notified of the final payment of claim, review any award or settlement made between the parties and filed with the board and, on such review, may make an award ending, diminishing or increasing the compensation previously awarded or agreed upon, subject to the maximum or minimum provided in this Title, and

shall immediately send to the parties a copy of the award. No such review shall affect such award as regards any moneys paid." Ga. L. 1937, pp. 528, 534. It is my opinion that the case under discussion is, as held by the Court of Appeals, distinguishable under its facts from the case of *Ætna Life Insurance Co.* v. *Davis,* 172 *Ga.* 258 (supra). In the *Davis* case, it would seem to appear plainly from the reported statement of facts that on the original hearing before the commission there had been an adjudication that the alleged serious pain and suffering then complained of (and later sought to be again complained of on review) were not occasioned by any injury which arose out of and in the course of the employment. This is all set forth at length in the report of that case (pp. 259, 260). It follows that such adjudication in the original hearing, unappealed from, became res adjudicata, and this question could not again be adjudicated on a subsequent *review* of the case. It seems clear that, since the serious pain and suffering complained of at the hearing on review had already been solemnly adjudicated at the original hearing as not having been occasioned by the trivial injury which arose out of and in the course of the employment, it matters not what change may have transpired with respect thereto. Under the facts as disclosed by this court in its report in the *Davis* case, the conclusion there arrived at was necessitated.

It was held by this court, in *Home Accident Insurance Co.* v. *McNair,* 173 *Ga.* 566, 570 (supra): "It is not the purpose of section 45 of this act to abolish entirely the doctrine of res adjudicata; but it was intended to relieve the parties from this doctrine in the particular instances named therein. The ruling of the Court of Appeals in *South* v. *Indemnity Insurance Co.,* 39 *Ga. App.* 47 (supra), states the true applicable principle of law." The ruling referred to in the *South* case, as approved by this court in the *McNair* case, was as follows: "Under section 45 of the workmen's compensation act, on application of any party at interest 'on the ground of a change in condition, the industrial commission may at any time review any award or any settlement made between the parties and filed with the commission, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded.' Upon an application for such review, the essentials leading up to the award are to be

taken as res judicata, but the physical condition of the employee remains open to inquiry." Citing *Gravitt* v. *Georgia Casualty Co.*, 158 *Ga.* 613 (123 S. E. 897); *Globe Indemnity Co.* v. *Lankford*, 35 *Ga. App.* 599 (134 S. E. 357); L. R. A. 1916A, 163, 164); 40 Cyc. 131, 132. It accordingly follows that since in the *Davis* case there had been an adjudication adverse to the claimant at the original hearing on one of the essential elements of the claimant's case, to wit, that the pain and suffering again complained of was not occasioned by any injury which arose out of and in the course of the employment, and since such original holding, unappealed from, became res adjudicata, so as to prevent a redetermination of that issue on a subsequent review, which is limited to a consideration of a change in condition with respect to an injury arising out of and in the course of the employment, it follows, I repeat, that the holding in the *Davis* case is inapplicable, under its facts, to a case like the present one, where there had been a definite adjudication in the claimant's favor upon each and every essential element of his claim, except the one question relative to the duration of the injury.

It is said, however, that the original judgment, adverse to the employer in all respects save as to the necessary continuance of the injury as it then appeared, can not form the basis of a subsequent review by reason of a change in condition, for the reason that the employer could not have appealed from the original adjudications which were adverse to him. In the first place, it does not appear that the statute makes the right of appeal from the original award a condition precedent to the right of review. But aside from this, and even assuming that such be the case, would it not be more in consonance with a liberal construction of the statute, including the invaluable right of review conferred, to treat the original judgment in favor of the workman on all questions other than the condition of the injury as a continuing judgment, final as against the employer so as to cut off an appeal only upon the actual allowance of compensation after subsequent proof of a change of condition on review, rather than to utterly destroy the explicit right of review plainly conferred? It would not seem, however, that the employer would have to thus treat the original judgment as a continuing one, awaiting the final award of compensation, in order to avail himself of the right of appeal. As recognized in the majority opinion, in

order to make an award either allowing or disallowing compensation, the Industrial Board must under the law determine the preliminary question whether or not there was an accidental injury, and whether or not it arose out of and in the course of the employment. The workmen's compensation statute seems in one respect to be sui generis. Ordinarily, judgments unappealed from are res adjudicata upon all issues decided. Under the provisions of this particular statute, however, this is true only as respects the preliminary adjudications, whereas the finding relative to the extent of the injury is left open to future inquiry on a subsequent review. Since this is true, and since the sole purpose of Code § 114-709 is to expressly confer this right of review upon the solitary issue of a change in condition, and since all other unadjusted issues have become res adjudicata, can it be said that the original adjudications on these preliminary questions are merely "advisory opinions?" As to whether the accident did or did not arise out of and in the course of the employment, may, as it often does, constitute one of the main vital and contested issues. Where the commissioner adjudicates this issue in favor of the workman, but further finds that the limited duration of the injury as it then appeared did not authorize compensation, this amounts to an adverse adjudication against the employer, setting up and establishing a contingent liability, subject to be converted into actual, present liability by thereafter merely showing the necessary change in condition of the injury. As to all other questions, he is helpless to defend. This being true, upon the rendition of such original adverse judgment, can it really be said that the employer "had suffered no injury" thereby, and for that reason should be denied an immediate appeal from such judgment, even though, if the right of appeal be denied, the adverse judgment upon all such vital issues became absolutely fixed? To say that such an adverse holding on such vital preliminary issues is not "injurious" to the employer, would seem to really "beg the question" we are in fact considering. Of course, if there be no injury, there can be no appeal; but the question as to whether there *is* an injury constitutes the problem. If we simply take the statute to mean what it says when it provides for a review on account of a change in condition, and if we concede, as this court has held, that all other preliminary questions decided on the original hearing became res adjudicata, it would seem injurious indeed for an employer, if de-

prived of his right of appeal on such adjudication, to thereafter stand stripped of every possible right of defense with respect thereto. To deny the right of appeal on the theory that the adverse judgment is not injurious, would be to fail to take into account that under the provisions of the statute, permitting a future review on the question of a change in condition, such preliminary adjudications, adverse to the employer, amount to making him the outright insurer of the employee upon the required change in condition being shown. It would seem, therefore, that any one of the three constructions which have been mentioned, relative to the right of appeal as affecting the right of review, would be preferable to simply reading out of the statute the right of review in a case of this kind.

The ruling in the majority opinion has been well and forcefully presented. It is urged that under the statute the only judgment which is authorized on review is one which would either end, diminish, or increase the compensation previously awarded, with the result that, where the previous judgment failed to allow any compensation at all, there is nothing to end, diminish, or increase. It appears that this is really the main controlling basis on which the majority opinion is grounded, since, after quoting the first portion of Code § 114-709, the court says: "Thus far, apparently the purpose of the statute is to keep open the question of the extent of disability, in order that either party may later have that question re-examined for the protection of their respective rights. But the statute does not stop here; and under the well-recognized rule of construction applicable alike to statutes and contracts, they must be construed as a whole, and the law will not sanction a construction of a isolated portion apart from the whole." That the statute is beneficent in character, and should be liberally construed in favor of the workman, has been many times declared by this court and by practically all the courts. In "construing the statute as a whole," must precedence be given to what might perhaps seem restrictive language in dealing with the mere *form of the judgment* to be entered on review, over and above the express language of the statute creating the *substantive right* to review *"any"* award on the ground of a change in condition? It seems true enough that, in framing the statute with respect to the mere form of the order, a previous award of compensation might have been in mind; but must the plain and specific right to review "any" award on account

of a change of condition be nullified merely because the statute in going through the useless procedure of setting forth a form of judgment may have used words which might not seem strictly and technically comprehensive as to the scope of every possible rendition? It is not even certain that this purely formal portion of the statute, as distinguished from the substantive right to review any award, so plainly and clearly set forth, could even by the strictest of strict constructions be taken to eliminate by indirection all right of compensation in a case where none had been bestowed in the original judgment. Nothing multiplied by nothing equals nothing; nothing subtracted from nothing equals nothing; but something added to nothing amounts to an increase. At least, to hold otherwise would not be a liberal construction, but would be to strain the etymological and generic sense of words to the n-th power. Where, as in this case, the board enters a judgment in favor of a workman upon each and every essential element save the requisite duration of the injury, it would ordinarily award doctor's bill and hospital expense. In this particular case there happened to be none. It adjudicated all the facts and rendered res adjudicata every element of the case except that one element which the law says remains open to future inquiry. In such a case, if merely because there was no doctor's bill or hospital expense to award, and because of such fact and because the injury under its then condition had not continued for the minimum period, no compensation was allowed, must we write out of the statute the plain, clear, and unequivocal provision allowing a future review under changed conditions of the injury, merely because, in dealing with the formal portion of the statute relating to the language of the new judgment, the word "increase" was used instead of some other word carrying a more accurate generic import?

Moreover, even if language relating to the mere form of the judgment should be given precedence and be taken to override and annul the plainly conferred substantive right of review upon a change of condition, and even if it were to be assumed that the technical connotation of the words, end, diminish, and increase, are not, strictly speaking, comprehensive enough to include expressly a new judgment allowing compensation where none had been previously awarded, it does not seem, even then, that the statute purports to limit the form of the judgment by excluding any other

possible form which might be appropriate to the evidence adduced on a review which has been expressly authorized. As to the form of the judgment, the statute simply says that on such a review the board "may" enter an award "ending, diminishing, or increasing the compensation previously awarded." While they "may" do this, the statute does not forbid any other or additional form of award which the evidence might authorize or require. The word "may" ordinarily denotes permission and not command, except when used in a statute where the public interest is concerned, in which case it will be construed to mean "must" or "shall." Code, § 102-103; 26 Words & Phrases, 762. The question here is not whether the word "may" is used in a permissive or peremptory sense, since the statute most assuredly does command and require that a new judgment shall be entered on review. The real and only question then is whether the use of this language, including the word "may," with respect to the form of the judgment is permissive or *restrictive* in character. Does it not only mean that the board "may" enter a new award, ending, diminishing, or increasing the old award, but must it also be taken to plainly and definitely exclude by implication any other form of judgment which might be appropriate under the evidence adduced at the authorized review? If such a strict and rigid construction could be arrived at, it could be done only by application of the maxim, *expressio unius est exclusio alterius.* This maxim has its proper place, but should not be applied to overthrow in part the manifest purpose and intent of a beneficent statute which it is our duty to construe liberally in favor of a workman on the authorized review of his claim for compensation. The proper application of the maxim is to arrive at the intent of the lawmaking body—not by indirection to restrict its manifest purpose. Thus, Broom's Legal Maxims (9th ed.), 421, has this to say: "Great caution is necessary in dealing with the maxim *expressio unius est exclusio alterius;* for, as Lord Campbell observed in Saunders v. Evans [8 H. L. Cas. 721, at p. 729], it is not of universal application, but depends upon the intention of the party as discoverable upon the face of the instrument or of the transaction; thus, where general words are used in a written instrument, it is necessary, in the first instance, to determine whether those general words are intended to exclude other matters besides such as are specifically mentioned, or to be referable exclusively

to them, in which latter case only can the above maxim be properly applied. Where, moreover, an expression, which is prima facie a word of qualification, is introduced, the true meaning of the word can only be ascertained by an examination of the entire instrument, reference being had to those ordinary rules of construction to which we have already adverted." Later (p. 427), this authority states: "A statute is to be so construed, if possible, as to give sense and meaning to every part; and the maxim *expressio unius est exclusio alterius* was never more applicable than when applied to the interpretation of a statute. . . Thus it sometimes happens that in a statute, the language of which may fairly comprehend many different cases, some only of those cases are expressly mentioned by way of example merely, and not as excluding others of a similar nature." In *Ga., Fla. & Ala. Ry. Co.* v. *Sasser,* 130 *Ga.* 394 (60 S. E. 997), the court held that the act approved December 21, 1899 (Acts 1899, p. 48), which confers authority upon the judge of a city court to preside in another city court when the judge of the latter court is disqualified or is providentially prevented from trying the case, is not repugnant to art. 6, sec. 5, par. 1, of the constitution, which provides that "In any county within which there is, or hereafter may be, a city court, the judge of said court and of the superior court may preside in the courts of each other in cases where the judge of either court is disqualified to preside." In the opinion the court said (emphasis mine): "The argument advanced against the constitutionality of the act of 1899 is that the word 'may' in the quoted clause of the constitution should be construed 'shall,' and that by the application of the maxim *expressio unius est exclusio alterius,* only a judge of the superior court can preside in a city court in cases where the judge of the latter court is disqualified. The word 'may' ordinarily denotes permission, and not command. Where the word 'may,' as used in a statute, concerns the public interest or affects the rights of third persons, it will be construed to mean 'must' or 'shall.' *Birdsong* v. *Brooks,* 7 *Ga.* 88; *Weems* v. *Farrell,* 33 *Ga.* 419. The public is concerned in the prompt administration of the law, and this constitutional provision, looked at as a delegation of power, will be construed to impose a duty on judges to preside for each other in case of disqualification. But whether the word 'may' shall be construed to have the effect of *excluding* other superior court judges from presid-

ing out of their respective circuits in a given case, or of denying the legislature the power of otherwise supplying the place of a disqualified city court judge, depends on the ascertainment of the *constitutional scheme and purpose in this respect, as revealed by the context."* Here, just as in that case, if we consider the purpose of the statute, and the entire language of Code § 114-709 as amended, authorizing a review on account of a change in condition, it would seem unreasonable to construe the language relating to the mere form of the judgment as, by indirection, actually restricting or intending to restrict the board in entering the form of judgment which they might deem the evidence. authorized or required. This would seem an improvident application of the legal maxim, which, as already observed, should be applied with great caution.

That no such restricted import was in the minds of the legislature would seem to be apparent, if we suppose that on the original hearing some compensation had in fact been *allowed,* and if we suppose that on a subsequent review, on account of alleged change in condition, the board should find that there had in fact been no change in condition. In such a case, what would be the new award, governing future compensation, which the statute requires to be entered in lieu of the old award? According to the argument, the hands of the board would be tied. It *must* enter a new award and serve copies thereof on the parties; but under the strict, rigid, and stringent meaning of the statute now insisted upon as limiting the form of the award, it could not enter any judgment at all, for the reason that it could neither end, diminish, or increase the old award. Let us suppose another case, to illustrate the fact that the legislature could not have had in mind any purpose to thus rigidly and by implication exclude any judgment on review except one where compensation had been previously awarded. Suppose a case where compensation had been awarded. Let us then suppose that after the award of compensation the disability of the employee temporarily ceased, and that the employer obtained a judgment on review ending the compensation. Let us then suppose that thereafter, during the period of limitation, the disability returned, it is reasonable to suppose that the legislature intended by such indirect language to prevent the employee from then coming before the board and showing the new, changed condition, whereby he would be entitled to compensation? If the strained construction as contended be cor-

rect, the statute does not mean what it says when it provides that within the stated period either the employer or the employee can be heard on review because of a change in the condition of the injury. See, in this connection, *Ware* v. *Swift & Co., 59 Ga. App.* 836, 841 (2 S. E. 2d, 128). In my opinion, the ruling of the Court of Appeals was sound, and correctly distinguished the instant case from the conclusion reached by this court in the *Davis* case, where, under its own but different state of facts, the judgment arrived at was necessitated.

Justice BELL concurs in this dissenting opinion.